UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EROS LAMB,<br><br>Plaintiff,<br>v.<br><br>MEDICAL MANAGEMENT INTERNATIONAL INC., d/b/a BANFIELD PET HOSPITAL,<br><br>Defendant. | CASE NO. 3:25-cv-05141-DGE<br><br>ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT (DKT. NOS. 36, 39) |

This matter comes before the Court on cross motions for partial summary judgment filed by Plaintiff Eros Lamb and Defendant Medical Management, Inc., d/b/a Banfield Pet Hospital. (Dkt. Nos. 36, 39.) For the reasons identified herein, Plaintiff's motion for summary judgment (Dkt. No. 36) is GRANTED in part and DENIED in part, and Defendant's motion for summary judgment (Dkt. No. 39) is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant operates a chain of veterinary clinics with offices nationwide, including in Washington State. (Dkt. No. 1 at 2.) Plaintiff began working for Defendant in April 2014, first

in Defendant's call center, then later as a Senior Hospital Installation Coordinator. (*Id.* at 1.) Plaintiff initially worked for Defendant in Washington State but transferred to Oregon in 2023. (*Id.* at 1–2.) From the beginning of his employment until August of 2024, Plaintiff's compensation plan provided for a weekly salary that accounted for 40 hours of regular pay and up to 30 hours of overtime pay per week. (*Id.* at 3.) In the event that employees worked more than 70 hours a week, they were instructed to submit those hours to their line manager so they could be paid for those additional hours at a rate of 1.5 times their regular hourly rate. (Dkt. No. 1-1).

On February 19, 2025, Plaintiff filed a complaint in this Court asserting causes of action against Defendant under the Fair Labor Standards Act ("FLSA"), the Washington Minimum Wage Act ("MWA"), and the Oregon Minimum Wage Laws. (Dkt. No. 1 at 5–9.) Plaintiff alleges Defendant failed to comply with the FLSA, the MWA, and Oregon law by failing to properly compensate Plaintiff for overtime hours worked. (*Id.* at 3.) Plaintiff alleges his compensation plan, which includes a pre-determined amount of overtime, does not meet the statutory requirements of a permissible "Belo Contract" or "Belo Plan" set forth in 29 U.S.C. § 207(f).[1] (*Id.* at 3–4.) Plaintiff further alleges Defendant engaged in retaliation by firing him in October 2024 shortly after he complained to Human Resources about unpaid overtime compensation, under the pretext that Defendant was eliminating his position. (*Id.* at 4.)

---

[1] To qualify for the "Belo plan" exception to the general rule that non-exempt employees receive overtime compensation, an employer must demonstrate that the compensation plan: (1) is a bona fide individual contract or collective bargaining agreement; (2) provides for payment of a guaranteed weekly salary based on a specific regular rate of pay; (3) guarantees pay for not more than 60 hours a week; and (4) the employee's duties necessitate irregular work hours. 29 U.S.C. § 207(f).

Defendant denies the allegations and asserts that "Plaintiff was properly compensated utilizing an alternative method of calculating payment for hours worked." (Dkt. No. 11 at 8.) Notably, Defendant does not invoke § 207(f) as an affirmative defense or assert that the compensation plan was a valid "Belo contract." (*See id.*) Defendants also argue that Plaintiff's claims are time-barred by the applicable statute of limitations. (*Id.*)

Shortly before the close of the discovery period, the parties filed numerous discovery dispute statements with the Court, and the Court denied Defendant's motion for discovery related sanctions. (*See* Dkt. Nos. 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 37, 53.) On June 29, 2026, Plaintiff and Defendant each filed motions for partial summary judgment. (Dkt. Nos. 37, 39.) The parties submitted responses (Dkt. Nos. 43, 44) and replies (Dkt. No. 51, 52) to each motion.

## II. LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if there is sufficient evidence on the record for a reasonable trier of fact to return a verdict for the nonmoving party. *Id.* The party moving for summary judgment bears the initial burden of identifying the portions of the pleadings, discovery, and affidavits that show the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). The moving party may meet this burden by showing the non-moving party has failed to provide evidence in support of their case. *Id.* at 325; *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).

If the moving party meets its initial burden, the nonmoving party must point to specific evidence in the record showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250; *T.W. Elec. Service Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("[T]he nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment."). If the nonmoving party fails to put forth such evidence, then the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. In determining whether a genuine dispute of material fact exists, "[t]he deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017). Disputed facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," but irrelevant or inconsequential disputes will not preclude summary judgment. *Anderson*, 477 U.S. at 248.

## III. DISCUSSION

### A. Plaintiff's Motion for Summary Judgment (Dkt. No. 36)

1. § 207(f) "Belo Plan"

Plaintiff first argues he is entitled to summary judgment declaring as a matter of law that his compensation plan was not a valid Belo Plan under the FLSA. (Dkt. No. 36 at 11–17.) In response, Defendant argues the Court may not properly rule on this question because Defendants themselves have not relied on § 207(f) in this case. (Dkt. No. 47 at 4.) In their view, "Plaintiff's motion amounts to a request that this Court find in his favor on an issue not raised in this case and issue an advisory opinion." (*Id.*)

Article III of the Constitution empowers the federal courts to decide only "live cases or controversies"; a court may not "issue advisory opinions [or] declare rights in hypothetical

cases." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Having reviewed the record, the Court finds that Defendants have not raised § 207(f) as an affirmative defense to liability, and in fact, explicitly highlight their ongoing choice not to do so at this stage.[2] (*See* Dkt. Nos. 11, 47 at 4.) The Court therefore concludes this issue does not present a live case or controversy. As such, the Court does not rule on whether § 207(f) applies to the facts of this case.

For the sake of clarity though, Defendants are precluded as a matter of law from raising this affirmative defense at a later date. "Where a movant puts liability at issue on summary judgment, a defendant opposing summary judgment may not decline to raise an affirmative defense that, if successful, would defeat the movant's claim, and then seek to assert that defense at trial." *Netlist Inc. v. Samsung Electronics Co., Ltd.*, 2023 WL 6820683, at *3 (9th Cir. Oct. 17, 2023). Just as Plaintiff may not seek summary judgment on an affirmative defense Defendant has not raised, neither shall Defendant be permitted to raise the same now-waived defense at trial.

Accordingly, Plaintiff's request for summary judgment as to whether the Banfield compensation scheme is a valid "Belo" plan under§ 207(f) is GRANTED on the basis that Defendant has waived this defense.

2. Administrative Exemption Defense

Plaintiff also argues he is entitled to summary judgment declaring as a matter of law that Defendant waived any exemption defense by failing to plead it and then proceeds to argue that Plaintiff would not qualify for an exemption defense even if Defendant had not waived it. (Dkt.

[2] "Plaintiff is not entitled to have the Court rule on this issue because Banfield *does not* rely on Section 207(f) in this case." (Dkt. No. 47 at 4, emphasis added.)

No. 36 at 17–26.) Defendant responds first by pointing out that they have not yet pled any "executive, administrative, outside sales, or other exemption," and as such, the Court need not rule on this issue. (Dkt. No. 47 at 11.) Further, Defendants argue that they are not precluded from raising this affirmative defense for the first time at the summary judgment stage, and that Plaintiff has not met his burden for summary judgment on the administrative exemption defense. (*Id*. at 12.)

As with the § 207(f) exception above, Defendants did not raise the administrative exemption in their answer. (Dkt. No. 11.) While this does not necessarily preclude Defendant from raising it at the summary judgment stage, Defendant still has not affirmatively asserted the defense. Instead, throughout its motions and responses, Defendant asserts that Plaintiff "undisputedly" was classified as "salaried, non-exempt" employee. (Dkt. Nos. 39 at 5, 6; 52 at 5, 14.) In their response to Plaintiff's interrogatories, Defendants attempt to reserve the right to raise this defense at trial—while in the same paragraph noting that "numerous documents confirm Plaintiff's classification as nonexempt." (Dkt. No. 36-6 at 5.) Even where Defendants would have been permitted to raise an exemption defense at this stage, these repeated conclusory statements that Plaintiff was non-exempt, coupled with the absence of a clear assertion of the defense, lead the Court to believe Defendant still is not raising the administrative exemption.

Accordingly, the Court concludes Defendant has waived any exemption defense by failing to assert it here or in previous pleadings. The portion of Plaintiff's motion for summary judgment seeking judgment that Defendant has waived the administrative exemption is therefore GRANTED.

3. Good Faith and Willfulness

Finally, Plaintiff argues he is entitled to summary judgment declaring that, as a matter of law, Defendant's violations were "willful and not in good faith, entitling Lamb to liquidated damages and an extended limitations period." (Dkt. No. 36 at 1.) However, Plaintiff makes this request without asking this Court to determine whether there has been an underlying violation. As to this underlying question, there remains a factual dispute as to whether Plaintiff worked any hours of overtime at all. (Dkt. Nos. 36 at 6–7; 47 at 17.)

The Court will not engage in analysis of willfulness and good faith where no underlying violation of the FLSA has been established. *See Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 162 F. Supp. 3d 490, 515 (W.D.N.C. 2016); *Regan v. City of Charleston, S.C.,* No. 2:13–CV–3046–PMD, 2015 WL 5331627, at *14 (D.S.C. Sept. 14, 2015). Plaintiff's request for summary judgment on the questions of willfulness and a good faith defense is DENIED.

**B. Defendant's Motion for Partial Summary Judgment (Dkt. No. 39)**

1. Retaliation Claims

Defendant first seeks summary judgment on Plaintiff's retaliation claims. (Dkt. No. 39 at 14–19.) To state a prima facie retaliation claim under the FLSA, a plaintiff must show: (1) he engaged in activity protected by the FLSA; (2) the defendant took an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Quinn v. Everett Safe & Lock, Inc.*, Case No. C13-0005, 2014 WL 4635577, at *5 (W.D. Wash. July 18, 2014) (citations omitted).

Plaintiff argues that summary judgment should be denied because Lamb had been engaging in protected activity prior to the beginning of the reduction in force ("RIF") process. (Dkt. No. 44 at 15.) Further, Plaintiff argues that Defendant has not shown the termination decision was complete before Plaintiff's October 21 email, thereby allowing the email to serve as

the basis for retaliatory action even without the alleged additional complaints prior to the June/July supervisor rankings. (Dkt. No. 44 at 19.)

Having reviewed the record, this Court concludes there remain genuine issues of material fact as to whether Plaintiff engaged in activity protected by the FLSA and whether there was a causal link between that protected activity and the eventual termination of his position. Accordingly, Defendant's request for summary judgment is DENIED.

2. Pretext and Mixed Motive Defense

Defendant next seeks summary judgment determining Plaintiff cannot argue his inclusion in RIF was pretextual, as well as summary judgment in its favor on its mixed motive defense. (Dkt. No. 39 at 15–19.) On both requests, the Court finds that there are genuine issues of material fact as to whether the RIF itself was influenced by retaliatory animus or whether it provides a separate, non-retaliatory justification for the elimination of Plaintiff's position. These portions of Defendant's requests for summary judgment are also DENIED.

3. Punitive and Liquidated Damages

Defendant also requests summary judgment in its favor on punitive and liquidated damages. (Dkt. No. 39 at 19–20.) As with Plaintiff's request for summary judgment on willfulness and good faith, the Court finds this request premature because no underlying FLSA violation has been established. The Court DENIES this portion of Defendant's motion.

4. Fluctuating Work Week

Lastly, Defendant seeks summary judgment finding that, as a matter of law, the "fluctuating work week" ("FWW") method should apply to any unpaid overtime Plaintiff is due. (Dkt. No. 39 at 20–21.) In Defendant's view, "Plaintiff has already been paid the regular rate for all of the hours he worked, and if he is awarded overtime, he is entitled only to the overtime

premium (.5 times his regular rate) for hours over 40 in a week." (*Id.* at 21.) Defendant also asks the Court for a legal determination stating that the relevant period for potential overtime claims ends on August 12, 2024, when Plaintiff and the rest of his team transitioned to a straight hourly, non-exempt status. (*Id.*)

Application of the FWW under the FLSA requires a showing of the following elements: (1) the employee works hours that fluctuate from week to week; (2) the employee receives a fixed salary that does not vary with the number of hours worked in the workweek; (3) the amount of the employee's fixed salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked; and (4) the employee and the employer have a clear and mutual understanding that the fixed salary is compensation for the total hours worked each workweek regardless of the number of hours. 29 C.F.R. § 778.114(a).

The Court concludes there is a genuine issue of material fact as to whether there was a "clear and mutual understanding" that Plaintiff's salary was designed to compensate for all of the hours he worked within a week. Defendant's request for a legal determination that the FWW method of calculation should be used in this case is therefore DENIED.[3]

## IV. ORDER

Plaintiff Motion for Summary Judgment (Dkt. No. 36) is GRANTED as to Defendant's having waived any § 207(f) or exemption defenses and DENIED as to all other issues. Defendant's Motion for Summary Judgment (Dkt. No. 39) is DENIED.

---

[3] To the extent the relevant time period is in dispute, Defendant asserts the relevant time period for Plaintiff's overtime claims must end on August 12, 2024, with the switch to the straight hourly system. (*See* Dkt. No. 39 at 21.) Plaintiff did not offer any comment on this point and the Court expects this will not be an issue at trial.

Dated this 5th day of November, 2026.

David G. Estudillo
United States District Judge